UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| MELANIE J. KIRKPATRICK,        Plaintiff,              v.  JO ANNE B. BARNHART,  Commissioner of the Social  Security Administration,              Defendant. | Case No. EDCV 05-514 AJW  MEMORANDUM OF DECISION |

Plaintiff filed this action seeking reversal of the decision of defendant, the Commissioner of the Social Security Administration (the "Commissioner"), denying plaintiff's application for supplemental security income ("SSI") benefits. The parties have filed a Joint Stipulation ("JS") setting forth their contentions with respect to each disputed issue.

**Administrative Proceedings**

The parties are familiar with the procedural history of this case, which is summarized in the Joint Stipulation. [See JS 2]. Plaintiff filed an application for SSI benefits on April 23, 2003, alleging disability due to severe back trauma, degenerative arthritis, loss of use of the arms and legs, a stroke, involuntary movements of the head, memory problems, and depression. [Administrative Record ("AR") 59, 92]. Following an administrative hearing, plaintiff's application for benefits was denied in a March 24, 2005 written decision by Administrative Law

Judge Peter J. Baum (the "ALJ"). [JS 2; AR 11-17]. He found that plaintiff had the following impairments, which were severe in combination: a history of C5-7 fusion, mild degenerative changes of the lumbosacral spine, mild spinal stenosis at C4-5, mild bilateral carpal tunnel syndrome, chronic pain syndrome, depressive disorder not otherwise specified, and anxiety . [AR 16]. The ALJ found that plaintiff retained the residual functional capacity ("RFC") for medium work without overhead reaching, pushing, or pulling and without exposure to hazardous machinery or unprotected heights, and that she was mildly impaired in her ability to interact appropriately with supervisors or co-workers due to possible interference from depressed mood. [AR 16]. The ALJ concluded that plaintiff was not disabled because she could perform work available in significant numbers in the national economy. [AR 16-17]. The Appeals Council denied plaintiff's request for review. [AR 4-6].

## Standard of Review

The Commissioner's denial of benefits should be disturbed only if it is not supported by substantial evidence or if it is based on the application of incorrect legal standards. Ukolov v. Barnhart, 420 F.3d 1002, 1004 (9th Cir. 2005); Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002). Substantial evidence is more than a mere scintilla but less than a preponderance. Richardson v. Perales, 402 U.S. 389, 401 (1971); Thomas, 278 F.3d at 954. Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson, 402 U.S. at 401 (quoting Consolidated Edison Co. of New York v. N.L.R.B., 305 U.S. 197, 229 (1938)); Thomas, 278 F.3d at 954. The court is required to review the record as a whole, and to consider evidence detracting from the decision as well as evidence supporting the decision. Verduzco v. Apfel, 188 F.3d 1087, 1089 (9th Cir. 1999); Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." Thomas, 278 F.3d at 954 (citing Morgan v. Commissioner of Social Sec. Admin., 169 F.3d 595, 599 (9th Cir.1999)).

## Discussion

**Medical opinion evidence**

Plaintiff contends that the ALJ did not properly evaluate the disability opinions of her treating physician, K. Ali Siddiqui, M.D.

A treating physician's opinion is not binding on the Commissioner with respect to the existence of an impairment or the ultimate issue of disability. Tonapetyan v. Halter, 242 F.3d 1144, 1148 (9th Cir. 2001). Where the opinion of a treating or examining physician is uncontroverted, the ALJ must provide clear and convincing reasons, supported by substantial evidence in the record, for rejecting it. If contradicted by that of another doctor, a treating or examining source opinion may be rejected for specific and legitimate reasons that are based on substantial evidence in the record. Batson v. Commissioner of Social Sec. Admin., 359 F.3d 1190, 1195 (9th Cir. 2004); Tonapetyan, 242 F.3d at 1148-1149; Lester v. Chater, 81 F.3d 821, 830-831 (9th Cir. 1995).

Dr. Siddiqui completed a "Medical Source Statement - Physical" form in December 2003 indicating that plaintiff could perform what amounts to less than sedentary work. [AR 291-292]. Asked to list the medical findings that supported his assessment, he wrote that plaintiff had numbness of the right upper extremity and back pain due to degenerative disc disease. [AR 291-292]. In June 2004, Dr. Siddiqui signed a "Work Capacity Evaluation (Mental)" form indicating that plaintiff had "moderate," "marked," and "extreme" mental functional limitations. No diagnosis or findings are indicated on the form. [AR 344-345]. The ALJ rejected Dr. Siddiqui's "functional checklists" because they were not corroborated by detailed, consistent clinical findings or by documented impairments, and because his assessment was inconsistent with the opinions of other treating and examining physicians. [AR 13-15].

**December 2003 physical disability opinion**

Plaintiff argues that the ALJ's reasons for rejecting Dr. Siddiqui's December 2003 disability opinion were invalid because Dr. Siddiqui specified that plaintiff had "low back pain due to degenerative disc disease," and because the finding of "D.D.D." (degenerative disc disease) or "herniated disc" appears in his progress notes. The ALJ, however, is not obliged to accept a treating physician's opinion that is "brief, conclusory, and inadequately supported by clinical findings." Thomas, 278 F.3d at 957. Dr. Siddiqui's opinion does not adequately

3

1 explain how a "painful back" and right arm numbness resulted in the severe functional
2 limitations described on the form. See Meanel v. Apfel, 172 F.3d 1111, 1113-1114 (9th Cir.
3 1999)(holding that the ALJ properly rejected a treating physician's "meager" opinion that failed
4 to explain how the claimant's impairment affected her ability to work and permissibly relied on
5 the opinion of an examining physician who made specific findings regarding the claimant's
6 work-related limitations). Furthermore, Dr. Siddiqui did not list any objective evidence or
7 clinical findings substantiating the diagnosis of degenerative disc disease.  Although he also
8 made that diagnosis in his treatment reports, there do not appear to be any supporting clinical
9 findings or diagnostic studies noted that support the conclusion that plaintiff suffered from
10 disabling disc disease. [AR 238, 243, 289-318]. The only imaging reports included with his
11 treatment reports are MRIs of plaintiff's brain and pelvis, which were normal except for findings
12 consistent with sinusitis on the brain MRI. [AR 317-318]. See Batson, 359 F.3d at 1195 & n.3
13 (holding that the ALJ did not err in rejecting a treating physician's opinion that lacked
14 supportive objective evidence, was contradicted by other statements and assessments of the
15 claimant's medical condition, and was based on his subjective descriptions of pain); Connett v.
16 Barnhart, 340 F.3d 871, 874-875 (9th Cir. 2003) (holding that the ALJ did not err in rejecting
17 the controverted opinion of a treating physician whose restrictive functional assessment was not
18 supported by his treatment notes).

19 As the ALJ correctly pointed out, the objective findings and opinions of other treating
20 and examining physicians are inconsistent with Dr. Siddiqui's assessment, and those doctors
21 consistently found either no objective findings or mild abnormalities. [AR 12-13]. In February
22 2002, Dr. Abu-Assal noted that plaintiff was status post-cervical compression and fusion at C5-
23 7 in September 2000.  She had done well post-surgically until she was involved in motor vehicle
24 accident in January 2001, leading to renewed pain complaints. [AR 230]. On the basis of a
25 2001 MRI, Dr. Abu-Assal diagnosed cervical and lumbar spondylosis with radiculopathy, but
26 he also recommended further studies in the form of a CT scan with myelography, which was

27
28

performed in April 2002.[1] [AR 230-232]. That study revealed post-surgical changes with anterior metallic plate and screws, a fibular graft from C5 through C7, mild degenerative changes and small posterior disc protrusion at C4-5 and C7 through T1, small posterior osteophytes, and borderline narrowing of the thecal sac. [AR 12, 233-234].

Plaintiff returned to Dr. Abu-Assal in December 2002 complaining of a movement disorder. [AR 12, 229]. Plaintiff exhibited tremors involving the head and upper extremities. Her neurological examination otherwise was normal. Dr. Abu-Assal noted that plaintiff's MRI scan revealed postoperative changes at C5 through C7 and mild spinal stenosis (narrowing of the central spinal canal) at C4 through C5. There was "no significant impingement on the neuronal structures." [AR 229]. Dr. Abu-Assal reported that a CT scan with myelography of the lumbar spine revealed mild degenerative changes with no evidence of significant central or neural foraminal stenosis, and an EMG and nerve conduction report showed mild bilateral carpal tunnel syndrome. [AR 229]. His impression was movement disorder based on plaintiff's presentation, but he noted that "[t]here does not appear to be a spinal cord cause for" her symptoms. [AR 229]. He made no reference to his prior diagnoses or to any cervical or lumbar spine disorder.

Plaintiff also presented in December 2002 to the Loma Linda University Medical Center Emergency Department by Dr. Jane and Dr. Salih with complaints of left shoulder pain. [AR 12, 103-107]. Plaintiff gave a history of two years of escalating use of Norco, a narcotic pain reliever prescribed by Dr. Siddiqui, and reported that although she was taking up to 360 pills a month, or about 12 pills a day, her pain was not controlled. [AR 106]. She specifically asked for Demerol. [AR 103]. Drs. Jane and Salih noted that plaintiff had been seen in the emergency room multiple times during the two preceding years for a variety of complaints and had been on narcotic analgesics for at least one year. [AR 104]. Based on plaintiff's demeanor,

---

[1] "Spondylosis" refers to stiffening or fixation of the vertebra and "often [is] applied nonspecifically to any lesion of the spine of a degenerative nature." Stedman's Medical Dictionary spondylosis (27th ed. 2000). Radiculopathy is a disorder of the spinal nerve roots. Stedman's Medical Dictionary radiculopathy (27th ed. 2000).

5

history, and lack of any objective physical findings on examination, plaintiff was diagnosed with opiate dependency and left shoulder pain of unknown etiology. [AR 104, 106]. It was noted that plaintiff became angry at the suggestion of narcotic dependence, refused the non-narcotic pain reliever that was offered, and left without awaiting discharge instructions. [AR 104].

In January 2003, neurologist Richard Tindall, M.D. performed a neurological examination at Dr. Siddiqui's request. [AR 12, 236-238]. Plaintiff appeared "drowsy and over-medicated." [AR 237]. Her "movements are very unusual and changed over the course of the exam." [AR 237]. Dr. Tindall did not "see evidence of a true movement disorder," and her neurologic examination did not suggest a stroke, progressive cerebellar disorder, Huntington's disease, or Wilson's disease. [AR 237]. Dr. Tindall suggested that plaintiff be re-evaluated after her medications were adjusted. [AR 237]. He noted that plaintiff "produced a form for me to fill out so that she could get disability," but that he "indicated to her I could not do that, because I cannot really give her a diagnosis at the present time." [AR 237].

At the Commissioner's request, plaintiff saw Sarah Maze, M.D. for a neurological examination in July 2003. [AR 257-260]. Her examination revealed reflex asymmetry in the arms and slightly reduced motion of the cervical spine, without sensory deficits. [AR 260]. The diagnosis was chronic pain syndrome. [AR 260]. Based on her formal physical examination, formal testing, and "careful observation of the patient's spontaneous actions during the contact period," Dr. Maze opined that, from a neurological standpoint, plaintiff could perform medium work without overhead reaching, pushing, or pulling. [AR 260].

The ALJ permissibly rejected Dr. Siddiqui's opinion that plaintiff had disabling functional limitations produced by degenerative disc disease because that opinion was inadequately supported by clinical findings in his progress notes or by objective data. For example, plaintiff's imaging studies showed no more than small disc protrusions. [AR 229, 233-234]. In addition, no other treating or examining physician diagnosed degenerative disc disease, much less at a disabling level of severity, and no other physician opined that plaintiff was disabled from any cause. The other treating and examining doctors detected either no objective findings or mild neurological abnormalities that were inconsistent with her claimed subjective symptoms. The

ALJ also noted that plaintiff had a formal diagnosis of narcotic dependence by treating doctors who concluded that she engaged in "drug seeking behavior." [AR 106]. In sum, the ALJ provided specific, legitimate reasons, based on substantial evidence, for rejecting Dr. Siddiqui's December 2003 disability opinion.

**June 2004 mental disability opinion**

The ALJ's rationale for rejecting Dr. Siddiqui's mental capacity evaluation is even more compelling. [AR 13]. In June 2004, Dr. Siddiqui signed a "check-the-box" form indicating that plaintiff had "moderate," "marked," and "extreme" mental functional limitations. He did not provide a diagnosis or list any clinical findings to support those functional limitations. [AR 344-345]. Tellingly, Dr. Siddiqui checked "yes" when asked if plaintiff was a malingerer. [AR 345].

The completely conclusory nature of Dr. Siddiqui's opinion was reason enough for the ALJ to disregard it. See Batson, 359 F.3d at 1195 & n.3 (holding that the ALJ did not err in rejecting an opinion that was "conclusionary in the form of a check-list" and lacked supporting clinical findings); Crane v. Shalala, 76 F.3d 251, 253 (9th Cir. 1996) (holding that the ALJ permissibly rejected "check-off" psychological evaluations that did not explain the basis for the evaluators' conclusions). In addition, Dr. Siddiqui's opinion was contradicted by the opinion of the Commissioner's consultative psychiatrist, Linda Smith, M.D. Dr. Smith examined plaintiff twice, in July 2003 and March 2004. [249-255, 325-332]. In July 2003, Dr. Smith opined that plaintiff had depressive disorder not otherwise specified and anxiety disorder not otherwise specified, but that she was only mildly impaired from a psychiatric standpoint. [AR 254]. In March 2004, Dr. Smith diagnosed depressive disorder not otherwise specified. She concluded that although plaintiff appeared to feel worse subjectively than during the previous examination, there was no objective evidence of more than a mild impairment. [AR 331]. Dr. Smith's opinions constitute substantial evidence supporting the ALJ's conclusion that plaintiff had no more than mild mental functional limitations.

The ALJ also rejected Dr. Siddiqui's opinion because "there is no indication that Dr. Siddiqui has any specialized psychological expertise or credentials." [AR 13]. Plaintiff argues

7

that the ALJ erred in failing to recontact Dr. Siddiqui to ascertain whether he had such expertise, but in fact plaintiff testified that Dr. Siddiqui is a general practitioner. [AR 356]. Accordingly, the ALJ did not err in rejecting Dr. Siddiqui's opinion in part because he is not a specialist in the relevant area. See Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996) (explaining that the opinion of a specialist about medical issues related to his or her area of specialization are given more weight than the opinion of a nonspecialist)(citing 20 C.F.R. §§ 404.1527(d)(5).

Furthermore, there is no merit to plaintiff's argument that the ALJ had a duty to develop the record further simply because plaintiff stated on her medication chart that Dr. Siddiqui prescribed Zoloft for severe depression beginning in 2004. Dr. Siddiqui's mental evaluation was dated June 2004, yet he did not even allude to any supporting diagnosis, clinical findings, or contemporaneous treatment, and plaintiff did not provide any evidence to corroborate the diagnosis and prescription she mentioned on her medication chart. The evidence before the ALJ was not ambiguous, and he did not err in failing to recontact Dr. Siddiqui or in rejecting that physicians' conclusory, unsupported opinion in favor of Dr. Smith's opinion that plaintiff was only mildly mentally impaired. [AR 13-14]. Mayes v. Massanari, 276 F.3d 453, 459-460 (9th Cir. 2001)(explaining that the ALJ's "duty to develop the record further is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence," and rejecting the argument that the ALJ breached his duty to develop the record as an impermissible attempt to shift the burden of proving disability away from the claimant).

**Conclusion**

For the reasons stated above, the Commissioner's decision is supported by substantial evidence and reflects the application of the proper legal standards. Accordingly, defendant's decision is **affirmed.**

**IT IS SO ORDERED.**


DATED: August 24, 2006                    _____/s/_____
                                          ANDREW J. WISTRICH
                                          United States Magistrate Judge